MICHAEL E. HANNON ET AL. *vs.* WILLIAM J. O'DELL ET AL.

First Judicial District, Hartford, March Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, JS.

In an action of replevin by *A* against *B*, the main issue was as to whether *C*, whose interest in the tangible assets of a copartnership had been attached by *B*, was a partner in the firm or not. This issue was decided in favor of *B*, and judgment rendered for a return by *A* of the property replevied. *A* failed to return the property and after *B* had obtained judgment against *C* in his attachment suit, he brought the present action upon the replevin bond against *A* and his sureties. *Held* that the value or amount of *C's* interest in the copartnership was not in issue in the replevin suit, nor affected by the judgment therein rendered ; and that in the present action *A* and his sureties were at liberty to offer evidence as to the amount and extent of that interest, in mitigation of damages.

Until the partnership accounts are adjusted and settled it is impossible to state the value or amount of one partner's interest. Accordingly, if such interest be attached, but no proceedings are instituted to have it ascertained, protected and made available as the partner's individual property, in accordance with the provisions of § 1316 of the General Statutes, and the firm, continuing in business, subsequently becomes insolvent, the creditor takes nothing by his attachment, although when it issued the partnership was solvent. And the result is the same although the property attached is replevied and a replevin bond substituted therefor.

Argued March 8th—decided April 25th, 1899.

ACTION upon a replevin bond, brought to the Superior Court in Hartford County and heard in damages to the court, *Prentice, J.;* facts found and judgment rendered for the plaintiffs for $80 only, and appeal by them for alleged errors in the rulings of the court. *No error.*

In July, 1896, William H. Cryne was a partner in a co-

partnership called the New Britain Grain Company.  On the 20th of that month McCrillis and Co., in a suit against Cryne, attached all of his interest in all the tangible property of the copartnership.  Three days later William J. O'Dell, Margaret Cryne and Colista L. Noble, claiming to be the New Britain Grain Company, caused the attached property to be taken from the officer by a process of replevin, and to be returned to the firm.  The bond sued upon in the present case was given in the replevin suit.  The complaint in the replevin proceedings was in the statutory form.

The answer in that suit consisted of two defenses, the first being a general denial.  The second, after setting up the attachment proceedings and justifying the detention of the goods under them, proceeds as follows: " 4. The plaintiff Margaret H. Cryne, was and is the wife of the said William H. Cryne, and has no interest in the said goods other than as agent for her husband, the said William H. Cryne, the defendant in said writ of attachment.  5. On the 17th day of June, 1896, the said William H. Cryne, who went into the grain and feed business in said town of New Britain April 2d, 1894, made an assignment in insolvency.  6. On the 25th day of June, 1896, the said William H. Cryne resumed the grain and feed business under the name of the New Britain Grain Company, using as capital therefor money which rightfully belonged to the creditors of his said insolvent estate, but was wrongfully withheld from them.  7. For the purpose of concealing his property from attachment and to defraud his creditors thereby, the said William H. Cryne pretended to have no interest in said the New Britain Grain Company, whereas the said Cryne owned the whole or a large part of said business.  8. On July 20th, 1896, the trustees of the insolvent estate of said William H. Cryne, in behalf of said estate and with the approval of the creditors of the same, waived all claim to said property in favor of these defendants, the said A. B. McCrillis & Co."

The reply admitted paragraphs one and five of the second defense, and in effect denied the rest of it.

In the replevin suit the court in December, 1897, found all

the issues for the defendants, and rendered judgment for them for a return of the goods attached and for costs. Subsequently, McCrillis & Co. recovered judgment against Cryne for $880.18 damages and costs, upon which execution was taken out and returned unsatisfied, and said judgment remains wholly unpaid. In March, 1898, the defendants in the replevin action made demand of the plaintiffs therein for the return of the property, but said demand was not complied with, and the costs in the replevin suit have never been paid.

When the goods were attached in July, 1896, the New Britain Grain Company was solvent and the interest of Cryne therein was of some value. "The exact value of the interest of Cryne in said partnership could not be ascertained from the evidence, but it was clearly greater than the amount of the judgment rendered in this action."

About a month before judgment was rendered in the replevin action, the New Britain Grain Company became insolvent and unable to pay its debts. At that time it turned over all its assets to a firm which had been its principal creditor from the beginning, in part payment of its indebtedness to said firm. Since that time it has remained insolvent and without assets.

After the attachment in July, 1896, no steps were ever taken by any person under § 1316 of the General Statutes. The debts owed by the New Britain Grain Company on July 20th, 1896, were subsequently, in the natural course of business, for the most part, if not wholly, paid, others being substituted therefor; so that its debts in November, 1897, had been almost entirely, if not entirely, contracted after the attachment in July, 1896.

Upon the trial the plaintiff introduced the files in the attachment suit and in the replevin suit, and it being admitted by the defendants that the judgment in the former suit was still unsatisfied, rested. "The defendants thereupon offered evidence to show that said New Britain Grain Co. was a partnership, and other evidence to show Cryne's interest therein, and the firm's financial condition upon July 20th, 1896, and in November, 1897, and thereafter,

claiming thereby to show that said firm was insolvent at all of said times." To this evidence the plaintiffs objected, upon the ground that Cryne's interest in said company had already been adjudicated in said replevin action, and that said adjudication was conclusive upon the sureties upon the replevin bond. The court overruled the objection and admitted the evidence, and the plaintiffs duly excepted.

Upon the trial the plaintiffs claimed: " (*a*) That the judgment in said replevin action established the interest of said Cryne in the attached property, and that said judgment was conclusive upon the defendants in the present action as to the title to the property, said Cryne's interest therein, and the amount of judgment to which the plaintiffs were entitled. (*b*) That as the said New Britain Grain Co. was solvent at the time of the attachment in the suit of McCrillis against Cryne, the court should render judgment for the amount of the interest of Cryne in the partnership property at the date of said attachment, or at least for the amount of his interest in the particular property attached at the time of said attachment. (*c*) That if the defendants had returned the attached property to the plaintiffs within a reasonable time after the judgment in the replevin suit, to wit, at the time of the judgment in the suit of *McCrillis* v. *Cryne*, the officer holding the execution on said last-named judgment could have sold the interest of Cryne, and that said interest would have been the interest of Cryne at the time of the attachment,—which was the proper measure of damages in this suit. (*d*) That the alleged partners in the New Britain Grain Co., having taken no action to enforce their equity to have said property applied to the payment of partnership debts, said equity was waived by them and could not defeat the attachment of McCrillis & Co., and that the partnership creditors had no equity or lien in or upon said property. (*e*) That said partners, having subsequent to said attachment paid the debts of the New Britain Grain Co. which existed at the time of said attachment, their equity to have the goods attached applied to the payment of the debts of said partnership was thereby exhausted and waived. (*f*) That the bond in the replevin

suit was a substitute for and took the place of the method allowed by the statute for ascertaining the interest of a partner in a copartnership, and substituting a bond in the place of the attachment ; and that the replevin bond was, in equity, the bond that would have been filed if the procedure under the statute had been followed."

The court, notwithstanding said claims of the plaintiffs, held that the plaintiffs in the present action had suffered no substantial damage from the non-return to them by the plaintiffs in said replevin action of the property replevied therein, and rendered judgment in their favor for $80 damages, which sum includes the costs in the replevin suit.

*Percy S. Bryant* and *John H. Kirkham,* for the appellants (plaintiffs).

*Henry C. Robinson* and *John T. Robinson,* for the appellees (defendants).

TORRANCE, J. McCrillis and Co. attached the interest of William H. Cryne in all the tangible property of the New Britain Grain Company, a partnership of which Cryne was a member. Subsequently William J. O'Dell, Margaret Cryne and Colista L. Noble, claiming to comprise said copartnership, brought an action of replevin against McCrillis and Co. and the officer who attached the goods, and by virtue of the writ issued in said action obtained possession of the attached goods. In the action of replevin judgment was rendered in favor of the defendants therein, for a return of the goods and for costs. The present action was brought upon the bond given in the replevin suit, for a breach thereof in not returning the goods upon demand and in not paying the costs. In the court below in the present action the defendants suffered a default and the case was heard in damages.

Upon the hearing the plaintiffs introduced the files and records in the original attachment suit, and in the replevin suit, and then rested. The defendants, in mitigation of damages, then offered evidence to show that the interest attached

in the original suit was only that of a copartner in copartnership property, and that such interest had become worthless by reason of the insolvency of the copartnership since the attachment. The plaintiffs claimed that the judgment in the replevin suit had established, in their favor, the title to the attached property, the amount of Cryne's interest therein, and the amount of the judgment to which the plaintiffs were entitled, and that this judgment was conclusive upon the defendants in the present action. The court, against the objection of the plaintiffs, admitted the evidence offered by the defendants, and overruled the claim of the plaintiffs, and one of the important questions in the case is whether the court erred in so doing.

The complaint in the replevin suit alleged, in substance, that William J. O'Dell, Margaret Cryne and Colista L. Noble constituted the copartnership known as the New Britain Grain Company; that they as such copartners owned the attached goods; that they were entitled to the immediate possession of them, and that the defendants named in said complaint wrongfully detained said goods from them.

The first defense in the replevin suit was a general denial, which put in issue all of these allegations. The second defense, however, was special, and alleged among other things, in substance and effect, that Margaret Cryne was not a partner in the Grain Company, but that William H. Cryne her husband was such a partner with O'Dell and Colista L. Noble. We think this is the fair import of the second defense; for it does not deny that O'Dell and Colista L. Noble were such partners, and it does in effect allege that William H. Cryne was a partner with them. In the reply the plaintiffs denied this allegation. In the replevin suit, then, under the second defense, the parties were at issue upon the question whether or not William H. Cryne was one of the partners in the copartnership called the New Britain Grain Company, the defendants therein asserting that he was, and the plaintiffs therein asserting that he was not, such partner. All the issues joined in the replevin suit were found in favor of the defendants therein. The court thus found, in effect, that

the property attached did not belong to a copartnership composed of William J. O'Dell, Margaret Cryne and Colista L. Noble, but did belong to a copartnership composed of O'Dell, Colista L. Noble and William H. Cryne ; finding also, in substance, that the interest of William H. Cryne in the copartnership goods had been lawfully attached, and that the plaintiffs in the replevin suit were not entitled to retain the goods replevied.

Under these circumstances, while it may be conceded that the judgment in the replevin suit, as between parties bound by it, determined conclusively that William H. Cryne was a partner in the New Britain Grain Company, and that all his interest in the tangible property of said copartnership had been lawfully attached in the McCrillis suit, yet it did not determine at all the amount or extent of that interest. That question was in nowise in issue in that case, and its decision is not in any way involved in the judgment therein rendered. That question, in the present suit, was still an open one, and under our practice the defendant was at liberty to offer evidence of the amount and extent of that interest in mitigation of damages. *Allen* v. *Woodford*, 36 Conn. 143 ; *Vinton* v. *Mansfield*, 48 id. 474 ; *Jackson* v. *Emmons*, 59 id. 493 ; *Fielding* v. *Silverstein*, 70 id. 605. In admitting the evidence objected to, and in overruling the claim of the plaintiffs upon the point in question, we are of opinion that the trial court committed no error.

At the time of the attachment in July, 1896, the copartnership was solvent, and the interest of William H. Cryne therein was of a value greater than the amount of the judgment rendered by the court below. It continued to do business from that time until November, 1897, when it became insolvent, and Cryne's interest became of no value. The debts which it owed in July, 1896, were paid in the due course of business and other debts were from time to time contracted. During this period its debts and its assets were constantly changing.

Upon the facts found, the plaintiffs claimed that they were entitled to judgment for at least the amount of Cryne's interest in the goods attached at the time of the attachment. This

claim the court in effect overruled, and this ruling is one of the errors assigned upon this appeal.

The interest of a copartner in the assets of the firm is the share to which he is entitled in the surplus of those assets after all the partnership claims and liabilities, including those of his copartners, have been satisfied; and for the purpose of having the copartnership property applied in satisfaction of those claims and liabilities, the copartners have an equitable lien upon that property, which takes precedence of any attachment or levy made by an individual creditor upon the share or interest of a copartner. *Church* v. *Knox*, 2 Conn. 514; *Brewster* v. *Hammet*, 4 id. 540; *Barber* v. *Hartford Bank*, 9 id. 407; *Witter* v. *Richards*, 10 id. 38; *Filley* v. *Phelps*, 18 id. 294; *Frink* v. *Branch*, 16 id. 260, 269; *Allen* v. *Center Valley Co.*, 21 id. 130, 135; *Staats* v. *Bristow*, 73 N. Y. 264; George on Partnership, pp. 179, 283. The interest of a copartner in the tangible partnership property may, under our law, be attached by his individual creditor, and the attaching officer may take the property into his possession and hold it to respond to the judgment in the attachment suit. *Stevens* v. *Stevens*, 39 Conn. 474. In such case, however, only the interest of the copartner in the property is taken; the attachment is subordinate to the copartnership claims and liabilities, and is subject to the equitable lien of the copartners. *Witter* v. *Richards*, *supra*; *Trafford* v. *Hubbard*, 15 R. I. 326. In such case, if the creditor subsequently levies his execution upon the property, he sells, not the goods attached, but only the interest of the debtor therein; the execution purchaser will stand in the place of the debtor to a limited extent, and the value of his purchase can only be ascertained upon a settlement of the copartnership affairs. *Church* v. *Knox*, *Filley* v. *Phelps*, *supra*.

In practical effect, about all that an attaching creditor or an execution purchaser acquires in such cases, is the right to call in some way for an account and settlement of the copartnership affairs, and the right to his debtor's share in the attached property upon such settlement.

The question in what court and in what manner such a

creditor or purchaser may proceed, in order to make his levy really available to him, has, in different jurisdictions, been much discussed and variously decided. In the absence of legislation upon the subject it is beset with difficulties. Of questions of this kind this court, in 1840, said: "They are attended with great difficulty; have been the source of much perplexity and confusion; and are not settled in the books with such clearness as to furnish a safe practical guide"; and suggested that "some plain and comprehensive legislative provisions on the subject" were necessary "in order to avoid the doubt and litigation to which it is constantly giving rise." *Johnson* v. *Sanford*, 13 Conn. 461, 466. To provide a remedy, in part at least, for this condition of things, an Act was passed in 1849 which now appears as § 1316 of the Revised Statutes. This Act, in cases like that of the attachment suit of McCrillis against Cryne, gives to any party to the action, and to any member or members of the partnership, the right to file a complaint in the nature of a bill in equity, in the court where the attachment suit is pending; and in substance gives to that court upon such complaint power to make such orders in the premises "as to equity shall appertain." Under the provisions of this Act McCrillis and Co. might have had the interest which they had attached, ascertained, protected and made available as security. In the attachment suit aforesaid, none of the parties to it, and none of the copartners, availed themselves of the provisions of this statute. Failing to do this, if the copartnership continued to do business, the interest attached was a fluctuating interest, uncertain in amount until a settlement of the copartnership affairs was had; it was the interest of Cryne at the time when such interest was ascertained and determined by a settlement of the copartnership claims and liabilities, including the claims of the other copartners against Cryne's interest. This is so from the very nature of the interest attached in such cases, and from the nature of copartnership property under such circumstances.

The attachment did not of itself work a dissolution of the copartnership. The partners, notwithstanding the attachment, had the right to continue the business until an account

was called for and a settlement was had.   The property after the attachment continued to be partnership property, subject to copartnership claims and liabilities then, existing or thereafter coming into existence in due course of business, until the partnership affairs were in some way settled.   Certainly the interest of the other partners in the attached goods were not holden by the attachment, and they were at liberty to deal with the goods as copartnership assets, until Cryne's interest therein was ascertained and converted into his individual property in some way.   If in cases of this kind the attached goods remain in the possession of the attaching officer until execution issues, all that can be sold upon execution is the interest of the debtor as of the time when a settlement of the copartnership affairs is had between the execution purchaser and the copartnership.   If at that time the copartnership is hopelessly insolvent, the execution purchaser takes practically nothing by his purchase, save the right to an account; and this is all that was secured by the attachment in such a case.   If, then, in the case at bar, the goods attached had not been replevied but had remained in the officer's possession, McCrillis and Co., upon the facts found, would in effect have taken nothing of value by their attachment.   Does the fact that they obtained a replevin bond place them in any better position than they would have occupied if the attachment had remained?   We think not.   The bond was a mere substitute for the interest attached.   It was given " to place the attaching creditor in as good a condition as he would have been, if his officer had continued in possession of the property.   It is a security substituted for that which is taken away by the replevin."   *Green* v. *Baker*, 14 Conn. 431, 434.

Upon the facts found, if the attached goods had continued in the possession of the officer, the attachment, by reason of the intervening insolvency of the corporation, would have been rendered practically worthless; and the obligors in the replevin bond in this case were entitled to show this condition of things in mitigation of damages; and if shown, the plaintiffs were entitled to nominal damages only.

The other claims made in the case are involved and disposed of in the claims already considered.

There is no error.

In this opinion the other judges concurred.