[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PREJUDGMENT REMEDY
The court finds probable cause that plaintiff shall obtain a judgment against John F. Murphy, Jr. (Murphy) for $180,000 and against William Barnett (Barnett) and Emanuel Psarakis (Psarakis) for $160,000.
The only real question in this matter concerns what property of defendants may be attached. Plaintiff wants a "writ of attachment of the general partnership interests owned by the defendants", Murphy and Psarakis, and of the stock owned by Barnett in a "professional services corporation."
Facts
Connecticut Savings Bank (CSB) lent Barnett, Psarakis, Murphy, and Arthur A. Sokol (Sokol) (the Obligors) $250,000 pursuant to a demand note dated April 16, 1987. This was modified by a letter agreement dated April 27, 1990.
Pursuant to the terms of the Note the Obligors jointly and severally promised to pay CSB, on demand, the sum of $250,000, or so much of the unpaid principal balance that was outstanding at the time of demand.
On November 14, 1992 the Connecticut Commissioner of Banking declared CSB insolvent, and pursuant to court order seized all of CSB's assets. Pursuant to 12 U.S.C. § 1821(d) the Federal Deposit Insurance Corporation (FDIC) undertook the liquidation of CSB's assets and sold the Note to Centerbank.
As of February 1, 1993, the total unpaid principal, interest and delinquency charges due from defendants under the Note is $168,915.55. They are also liable for costs of collection, including reasonable attorney's fees.
Centerbank has filed an Application for a Prejudgment Attachment to secure a judgment against the Borrowers in the above-captioned action. Centerbank seeks to attach, among other assets, Messrs. Psarakis and Murphy's respective interests in Robinson Cole, a Connecticut general partnership, CT Page 4332 and Mr. Barnett's rights and stock in Hoberman 
Pollack, P.C., a Connecticut professional services corporation.
Law
An attachment of any kind is limited to one "against the estate of the defendant, both real and personal." Conn. Gen. Stats. 52-279.[1] We know plaintiff is not seeking to attach any real property in either the partnership or the corporation.
We also know that personal property in "the estate of the defendant" may include fixtures, corporate shares, livestock, etc. Conn. Gen. Stats. Chapter 904.
I. Partnership
There is no question that plaintiff may secure by process of foreign attachment "any debts due from [the partnership] to [Murphy and Psarakis], . . . not exempt from execution." Conn. Gen. Stats. 52-329. This right includes garnishment of a partnership. Conn. Gen. Stat. 52-339. That does not seem to be what plaintiff wants from those two. Rather, it wants not a foreign attachment, or garnishment, but an attachment of their respective "interests" in the partnership.
No partner has "anything, separately, in the corpus of the partnership effects; but the interest of each is only his share of what remains after their partnership accounts are taken." Witter v. Richards, 10 Conn. 37, 40. What that means is "that partnership's assets must first be applied to liquidate the indebtedness as between the partners themselves, relative to the partnership, before any creditor on an individual partner can in any way appropriate the partnership fund to his individual debt." Meeker v. Thompson, 43 Conn. 77, 81.
That case in the next paragraph goes on to hypothesize: "Suppose the defendant [as an individual creditor of Meeker only] had sued Meeker and had attached some debt due the partnership, how much could [defendant] obtain? Only so much as would be left for Meeker, after paying all the partnership creditors, and all that was due [the other parties]". id. 81. CT Page 4333
The "title" of "a partner in partnership property" is attachable. Stevens v. Stevens, 39 Conn. 474, 480-481. For the mechanics of that attachment and subsequent execution after judgment, Hannon et al. v. O'Dell et al., 71 Conn. 698,705-707 is helpful.
It appears that in spite of our adoption of the Uniform Partnership Act, Conn. Gen. Stats. 34-39 through 34-81, the above common law principles still apply. Fidelity Trust Co. v. BVD Associates, 196 Conn. 270, 273. Specifically, Conn. Gen. Stats. 34-64 is a restatement of the common law, i.e., that a partner's interest in the partnership is personal property, Beecher v. Stevens, 43 Conn. 587, 592 and that his interest is only "in the surplus, if any." id. 592.
Thus, history tells us prejudgment attachments may be made on a partner's interest in a partnership for his personal debt. But what effect does Conn. Gen. Stats. 34-66 have? It allows a charge only on the application of a judgment creditor. But does that prevent a prejudgment remedy? The Uniform Laws Annotated does not indicate that the section was to be an exclusive remedy. 6 Uniform Laws Annotated, U.P.A. 25, 26, 28 and 40. Thus, we are forced to ask, when the sheriff attaches the partner's interest what does he get? Not specific property, that is clear and not any immediate right to possession of something. He can attach under Conn. Gen. Stats. 52-299 but in order to act on that attachment the creditor must obtain a judgment and then apply for a charge under Conn. Gen. Stats. 34-66.
Attachment is allowed against Murphy and Psarakis.
II. Professional Service Corporation
In regard to the attachment of a shareholder's interest or rights in a corporation, Conn. Gen. 52-289 controls even though in our case it is a "professional corporation." Conn. Gen. Stats. 33-182i and 33-182j.
Attachment is allowed as to the rights of Barnett in his share of the professional service corporation. N. O'Neill, J.