### No. 33,695

L. N. LYDICK, Executor of the Last Will and Testament of Charles E. Lydick, Deceased; JESSIE D. LYDICK, Trustee, etc., et al., *Appellants*, v. OLIVE M. LYDICK et al., *Appellees*.

(76 P. 2d 876)

Opinion filed March 5, 1938.

*E. C. Wilcox* and *J. Howard Wilcox*, both of Anthony, for the appellants.
*Donald Muir*, of Anthony, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action brought by the executor of a last will and testament and the residuary beneficiaries under the will against a divorced wife and specific legatees in the will, for a construction of the will, a postnuptial contract and a decree of divorce. Copies of these documents were attached to the petition, and plaintiffs introduced in evidence a motion of the divorced wife, filed in the divorce action after the death of the husband, to set aside the decree of divorce and the order of the court overruling that motion. There was no pleading filed in this action by the divorced wife, but she appeared by attorney. The matter of the construction of these three instruments was fully discussed and argued by the attorneys for plaintiff and defendant, and the court made a construction of these instruments, taken together, in favor of the defendant divorced wife. The plaintiff filed a motion for new trial, which was overruled, and from that ruling and the construction made of the instruments in question the plaintiffs appeal.

There was involved in this case, and in the matter of the construction of the will, a question of a trust estate created by the father of the testator, which is mentioned in the will here under consideration, but all parties agree that it is not properly and necessarily involved at this time. It is mentioned in the will here under consideration as paragraph 5.

The testator, Charles E. Lydick, and Olive M. Lydick were married July 27, 1915, and lived together until June 16, 1936. On that date they entered into a postnuptial agreement of separation and division of property wherein it was stated at the very beginning—

"That parties hereto, fully realizing that they are incompatible and cannot live together any longer as husband and wife and have any peace of mind and happy marital life, and that such incompatibility, the state of their minds, and the condition of their health, make it inevitable that a separation must take place between them of necessity, that they hereby agree to separate and further agree as to their property rights, real and personal, owned jointly or severally by them, or either of them as follows, to wit:"

Among other things the contract provided for the payment by the husband to the wife of $10 a month for a period of ten months. It also provided that—

"Each party hereto agrees never to set up any claim to any of the property hereto allotted to the other, or to any after acquired property, either in life or by way of inheritance.

"Each party hereto agrees that the other may hold, use, encumber, alienate, and convey any of said property hereafter acquired as his or her separate property, to the same extent as though the parties hereto were never married to each other . . ."

On the same date, namely, June 16, 1936, a petition for divorce, charging the husband with gross neglect of duty and extreme cruelty, was prepared and acknowledged by the wife in which reference was made to the postnuptial contract, a copy of which was attached to the petition. This petition was filed in the district court on the next day, June 17, 1936, and the husband on the same day filed his answer thereto. They agreed in open court that the matter might be heard as an emergency, and it was heard that day, the husband being present at the hearing but producing no evidence. The court took the matter under advisement, and on August 20, 1936, a little more than sixty days thereafter, rendered judgment in favor of the plaintiff, granting her a divorce. The last paragraph of the journal entry was as follows:

"It is therefore by the court ordered, adjudged and decreed, that the plaintiff be granted a divorce from this defendant; that the postnuptial contract and agreement ordered to be, and is hereby approved and incorporated in this decree by reference as though it were set out herein in full; and it is further ordered and decreed that the plaintiff have further judgment against the defendant for the costs of this action, assessed at $——— and for her attorney fees assessed at $60, and it is further ordered that this decree does not become effective so that either party may marry until the expiration of six months from this date of August 20, 1936."

Two days after the filing of the petition for divorce and the hearing of the evidence thereon, the husband executed a will which provided in the usual manner for the payment of debts and the making of two specific bequests. Then after paragraph 5, heretofore mentioned as referring to a trust proposition not involved at this time, follow paragraphs 6 and 7.

"6th. All the residue of my estate, real, personal and mixed, and including all household goods, personal effects, etc., I give, devise and bequeath to my wife, Mrs. Olive M. Lydick.

"7th. I further direct that my wife, Mrs. Olive M. Lydick, shall receive the benefits of paragraphs five (5) and six (6) as long as she is my wife, or remains single thereafter, but in the event that she should remarry, then in such instance it is my will and direction that Mrs. Olive M. Lydick not share, benefit and participate in the effects and benefits of my estate as devised in paragraphs five (5) and six (6), respectively, and instead of her taking said property therein devised, it is my wish, will and direction that all of said property in paragraphs mentioned, be devised to my legal heirs, and that

they share therein as provided by the laws of descent and distribution of the state of Kansas."

After designating in the usual manner one of his brothers as sole executor without bond and with power to sell and convey property without an order of court, the will gives him, in paragraph 10, full power to determine any question arising concerning the construction and administration of the will upon his own judgment or under professional advice; such determination, when put in writing and duly signed by him, to be final and binding upon all persons interested in the will.

On September 12, 1936, Charles E. Lydick was killed in an automobile accident. On October 12, 1936, the court in the divorce action overruled the motion of Olive M. Lydick to set aside the decree of divorce. On May 8, 1937, this action was brought, as stated above, for a construction of the will, the postnuptial or separation contract and the decree of divorce.

The following is the construction placed upon these instruments in the judgment rendered in this action June 21, 1937:

"That Olive M. Lydick was a beneficiary under the will and she is entitled to the residuary estate of said Charles E. Lydick, subject to the clause therein creating said L. N. Lydick as trustee and giving him authority to dispose of said estate and invest the money and pay her the net income therefrom; and that after the payment of the debts and special bequests mentioned, he should pay said income to said Olive M. Lydick as long as she remains single, and this, notwithstanding the fact that she was not his wife at the time of his death.

. . . . . . . . . . . . . . .

"That L. N. Lydick, as executor, is authorized to construe and interpret the will of Charles E. Lydick in all particulars, except those construed by this court, and having applied to this court for interpretation of said will, he will not be allowed to interpret the same adversely to the interpretation of this court.

"That the payment of ten dollars per month for ten months by the said Charles E. Lydick to Olive M. Lydick is a valid obligation against his estate, and if the same has not otherwise been discharged, it can be proved in the probate court of Kiowa county, Kansas; and that her proceedings in the divorce suit to set aside the decree would not preclude her from proving such claim."

Appellants present many reasons why the testator might have made his wife a beneficiary in his will, intending it to apply only while she was his wife, and having in mind the possibility of his death before any decree might be rendered in the divorce action, and also the possibility that she might fail to obtain a divorce. As to

the latter argument, it could not be very strongly argued that she would fail to have her petition granted when he heard her testimony and offered none to the contrary, and the court had before it the agreement he had signed stating that they could not live together any longer as husband and wife. It is argued that the testator must have had in mind when the will was prepared that they might again live together and that the postnuptial contract was a later development. This is not in harmony with the dates of the execution of the two instruments, and if the will might have been prepared before the postnuptial contract, as is argued, surely a change would have been made in it when it was executed two days after the hearing of the divorce case. As against this reasoning we are also met with the expression in the will, "as long as she is my wife," which would more nearly apply to a wife living apart from her husband, and would be very unusual language if applied to one living with her husband.

The argument of counsel for appellants is forcible when applied to the probable inclination and desire of the testator in case he should die before a decree of divorce might be granted the wife and it would be very natural and commendable, but we cannot separate very well the above-quoted clause from that which immediately follows it, viz., "or remains single thereafter"—that is, after she ceases to be the wife of the testator. Appellants insist that the word "or" surely was intended for "and," so that she would be his wife at the time of his death and remain single thereafter. There could be no criticism of such a sentence as being generally applicable, but we are not faced with an ambiguity or an obscurity. These parties were contemplating most positively a separation, and by reading this sentence with the disjunctive and in the light of the surrounding circumstances it more nearly meets the situation of the uncertain future, and in his desire to provide for her whether she be his wife or not at the time of his death. This, too, is in harmony with the provisions of the postnuptial agreement. The word "thereafter" does not refer to the testator's death, but to the fact of being the wife of the testator, "as long as she is my wife, or remains single thereafter." She was not the wife of the testator at the time of his death, being divorced less than a month before his death, but she remained single after being his wife. The next clause in the same paragraph terminates such beneficial rights "in the event that she should remarry." We find no ambiguity in this language, and the construction put upon this language was such as to give effect

to the testator's real intention as gathered from the entire document and taking into consideration all the circumstances under which the will was executed as was stated to be the rule for arriving at a construction of a will in many cases, particularly in *Hawkins v. Hansen,* 92 Kan. 73, 139 Pac. 1022, and *Pearson v. Orcutt,* 106 Kan. 610, 189 Pac. 160.

The second point raised on this appeal is with reference to that paragraph of the will which gave the executor authority to determine in writing, duly signed by him, any question as to the construction and administration of the will, and they insist that such right was not waived by the executor by his submitting, as one of the plaintiffs in this action, this question to the court for interpretation and construction. This matter may be answered in the first place by the fact that although the petition may place the executor in the class maintaining such right and authority, yet we are not advised by the record of any determination as to the construction of paragraphs 6 and 7 of the will having been made by him in writing, and if a construction had been so made by him it would not under the authorities cited by the appellants be conclusive if the decision should have been erroneous and a legatee would desire a review thereof in the regularly constituted courts. (See 69 C. J. 144, 871.) We could not consistently with these authorities regard the attitude of the executor in placing himself in a particular class in the petition as thereby rendering such a construction as the will authorized, and preventing the placing of a construction thereon by the district court, which was the sole purpose of the petition.

The third point involved in this appeal is the construction of the language of the postnuptial agreement, adopted and approved by the court in the divorce action, under which the divorced wife was to receive as part of the alimony allowed her the sum of $10 per month for a period of ten months. Appellant objects to the construction placed on this agreement, and divorce decree approving the same, for the reason that she has disapproved the other parts of the agreement and decree and is claiming under the will, and that she should not be permitted to claim partly under each and reject part under the contract and decree. Also, that she endeavored to have the divorce decree set aside after the death of her husband, and further that the installments would necessarily run after the death of her husband and beyond the six-months period mentioned in the decree.

Appellants cite G. S. 1935, 60-1511, *Scott v. Scott*, 80 Kan. 489, 103 Pac. 1005, and *Beasley v. Salkeld*, 131 Kan. 211, 289 Pac. 471. The two cases have reference to alimony not being a lien on the real estate of the husband without a special provision to that effect. We do not believe the question of a lien on property is involved here. The trial court in this action held that if the alimony was not otherwise discharged she might prove a claim for it in the probate court. In that way it would be only a debt, and property could, if necessary, be sold to meet it and other debts. The section above cited provides, among many other things, that alimony may be allowed "by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable."

Alimony payable in installments is permissible, but it must be in a definite aggregate sum or total, and if not it has been held to be void. (*Conway v. Conway*, 130 Kan. 848, 288 Pac. 566; *Revere v. Revere*, 133 Kan. 300, 299 Pac. 595; and *Catren v. Catren*, 136 Kan. 864, 18 P. 2d 134.) In the case at bar the definite aggregate total was $100, and it therefore was fully within the requirements in that particular.

Under the facts and circumstances of this case and the petition asking for a construction of the will, the agreement and the divorce decree, we see no good reason why some rights and privileges might not accrue to the divorced wife under the will and others under the agreement and decree, and the claim of one benefit under the will would not be necessarily inconsistent with a claim of another benefit under the agreement and decree. The dates of such instruments might make in some cases such claims plainly inconsistent, but not so in the instruments here under consideration. The will, although executed before the decree of divorce and after the making of the agreement, did not become effective until a few weeks after the decree, and although they were divorced there was no reason why the divorced wife might not be a beneficiary under his will. He could not devise to any one the property set aside to the wife in the agreement, but could do as he pleased with the property she recognized as being his by the terms of the contract. Besides, this is not a claim by way of inheritance excluded by the contract.

We find no error in the construction placed upon these instruments by the trial court.

The judgment is affirmed.