No. 38,489

LELA WILCOX, *Appellant,* v. CHARLES C. WILCOX and RODNEY B. STARKWEATHER, *Appellees.*

(240 P. 2d 144)

Opinion filed January 26, 1952.

*Max L. Dice,* of Johnson, argued the cause, and *E. B. McMahan,* of Boise City, Oklahoma, was with him on the briefs for the appellant.

*Chas. Vance,* of Liberal, argued the cause, and *Raymond Gates,* of Elkhart, and *H. Hobble, Jr.,* and *Chester A. Nordling,* both of Liberal, were with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: Plaintiff instituted this action against her divorced husband to collect installments of alimony due her under a judgment rendered in the State of California, and to set aside a deed made by him to the defendant Starkweather, allegedly made to defraud her of her rights as a creditor. She obtained an attachment on certain lands in Morton County. Her divorced husband made no appearance and the issue was tried between her and the defendant Starkweather. The trial resulted in a judgment against her and she has appealed to this court.

The abstract discloses the following circumstances leading up to the filing of the present action.

Sometime prior to June 2, 1931, Lela Wilcox commenced an action for divorce in the Superior Court of Los Angeles County, California, against her husband Charles C. Wilcox. On that date an interlocutory decree was rendered in her favor in which she was granted certain personal property and real estate and Charles C. Wilcox was given certain real estate in the State of California, subject to charges later created in favor of plaintiff, and the real estate in Kansas presently involved, the decree providing the Kansas real estate was "free and clear of any claim or demand of plaintiff." It was further ordered that Charles C. Wilcox pay the plaintiff as alimony the sum of $60 per month on September 1, 1931, and the first day of each month thereafter, "and until the further order of this court."

Sometime prior to March 28, 1946, Lela Wilcox commenced an action in the district court of Morton County, Kansas, against her former husband and others, in which she attached the involved real estate, the purpose of which was to collect due but unpaid installments of alimony under the California decree which she pleaded and in the claimed amount of $9,900 and interest, and to set aside a certain mortgage alleged to have been given to defeat her claims as a creditor of her former husband. For present purposes it may be said that on May 8, 1946, the trial court rendered judgment that the defendant mortgagees were barred and that Lela Wilcox recover from Charles C. Wilcox the sum of $4,437 and interest, and that the attachment on the involved real estate be confirmed and if the judgment be not paid within thirty days, the real estate be sold and applied to costs, taxes and the judgment. And it rendered a further judgment that Charles C. Wilcox was the absolute owner of the real estate "subject only to the lien of such attachment." Lela Wilcox attempted to appeal to this court from the above judgment, contending the trial court erred in applying a statute of limitations and in not awarding her a judgment for a larger sum. For reasons set forth in our opinion which is reported in *Wilcox v. Wilcox*, 162 Kan. 582, 178 P. 2d 233, the appeal was dismissed.

On May 16, 1946, Charles C. Wilcox contracted to sell the involved real estate to Rodney Starkweather, subject to the judgment in the case just referred to, for the sum of $1,500, and Starkweather was given the right to defend the action in which a motion for a

new trial was then pending. A warranty deed was then executed and delivered and was recorded the following day.

At sometime not disclosed by the abstract, but before July 30, 1948, Lela Wilcox commenced the action now before us, in which she alleged the California decree, the previous action in Morton County, that she had been allowed recovery of due and unpaid installments of alimony to January 1, 1945; that her attachment of the involved real estate had been sustained; that the real estate had not been sold; that installments of due and unpaid alimony commencing January 1, 1945, to and including April 1, 1948, in the amount of $2,400 had not been paid; that Charles C. Wilcox owned the land and had resorted to every possible scheme to place the real estate beyond the reach of his creditor Lela Wilcox; that he had fraudulently conveyed the real estate to defendant Starkweather without consideration to defraud her and that she had attached the real estate, subject to the original attachment. She prayed for judgment for the principal sum of $2,400 and interest; that the attachment be sustained, subject to the prior attachment, and that the real estate be sold and the proceeds applied to the satisfaction of costs, taxes and the judgment prayed for and that Starkweather be barred and decreed to have no interest in the real estate.

Starkweather answered, denying generally and alleging the conveyance to him was in good faith and for the full and fair market value of the real estate; that plaintiff's claim was stale and barred by the statute of limitations and that her petition failed to state a cause of action.

Lela Wilcox replied, denying any new matter pleaded in the answer and realleging the contract and deed between Charles C. Wilcox and Starkweather were in fraud of her rights as an attaching creditor.

A trial of the issues thus drawn was had and the court took the matter under advisement, and later and on February 12, 1951, and without making any findings of fact of any kind, rendered a general judgment denying plaintiff the relief prayed for by her. She filed her motion for a new trial and that being denied, she perfected her appeal to this court from the judgment and from the ruling on her motion for a new trial.

Before discussing appellant's contentions that the trial court erred, we note that although the abstract does not so disclose, at the oral argument we were advised by counsel for appellant and for

appellees that as the result of some proceedings not here involved Lela Wilcox had been paid the amount due her under the judgment of May 8, 1946.

In her brief appellant states that the question involved is whether the judgment of the trial court is contrary to the law and the evidence, and later that is expanded to include the ruling on the motion for a new trial. In the argument presented there is no separate discussion. Appellant presents authorities holding that the California decree is entitled to full faith and credit and for purposes here, that is conceded. She concedes, however, that a Kansas court would not have jurisdiction to render a judgment for installments of alimony coming due in the future where the original judgment reserved the right to modify the payments, but contends that the installments which are due, under the foreign decree, are the basis for suit in another state, and that is likewise conceded. She also admits that if she was not at the time a creditor of Charles C. Wilcox, she has no cause of action against his grantee Starkweather, but she presents no contention or authority supporting it that she was such a creditor, unless it be by reason of the terms of the California decree on which she relies. Following that she cites authorities dealing with badges of fraud and directs attention to that part of the evidence which she conceives makes them applicable here. In connection with matter of fraud, it may be said that the trial court's judgment has inherent in it a finding in favor of Starkweather that there was no fraud. All of appellant's argument is predicated on unfavorable inferences drawn from Starkweather's testimony. We will not review that testimony. Our examination of the record satisfies us that the evidence supports a conclusion that Starkweather purchased the property, subject to the lien of the judgment in favor of appellant, and for aught the record discloses, paid a full and fair consideration for the conveyance of the property to him. At the time of his purchase Starkweather had a right to rely upon the judgment rendered on May 8, 1946, in the first Morton County action, that his grantor Charles C. Wilcox was the absolute owner of the real estate subject only to the lien of the attachment.

In any event, before appellant could maintain an action against Starkweather to set aside his deed as being in fraud of creditors, it was encumbent upon her to show that she was a creditor of his grantor. Attention has been directed to the fact that under the California decree she was to receive alimony at a stated amount per

month until the further order of the court. When she instituted her first action in Morton County she sought to and did recover past due unpaid installments and that amount was all she was entitled to receive from any appropriation of the attached real estate. She was a creditor for the amount she recovered, but at that stage she was not a creditor as to amounts coming due in the future. Neither party cites *Trunkey v. Johnson*, 154 Kan. 725, 121 P. 2d 247, nor the second appeal in 156 Kan. 804, 137 P. 2d 186. In that case the effort was to recover for child support under a Washington decree. It is true the cases are distinguishable in that one involved child support and the one now under consideration involves alimony, but the decrees are quite alike in being subject to change by subsequent order of the court. In the first *Trunkey v. Johnson* case it was held:

"1. As a general rule, statutes authorizing attachments on claims not due apply only where there is an existing indebtedness which will become due and payable by mere lapse of time, and a liability which is conditional or dependent upon the happening of some future event is not a debt within the meaning of such statutes.

"2. The provisions of the code of civil procedure for attachment on a claim before it is due (G. S. 1935, 60-933, *et seq.*) do not create a cause of action but merely a method whereby a judgment based on a cause of action may be collected.

"3. The liability of a father for the support of his minor child, either at common law or by virtue of an order made in a divorce proceedings between the parents, is not such as to create the relation of debtor and creditor between the father and the child or any person to whom its custody may have been awarded as to the future support of such child.

"4. The liability for future support of a minor child last above mentioned is not a claim whithin the purview of the statutes referred to on [in] the second paragraph hereof." (Syl.)

In the second *Trunkey v. Johnson* case an effort was made to collect after accruing but unpaid installments by a second attachment and to set aside a deed made by the defendant Johnson shortly after the judgment in the first case, a situation quite like that now before us. In disposing of the case this court held:

"1. In a suit brought for a sum claimed to be due for child support, required by a divorce decree of another state, real property, alleged to belong to the defendant, a nonresident, was attached. Pending the trial defendant conveyed the real property. Upon the trial the court found the sum due plaintiff, confirmed the attachment and ordered the attached property to be sold to pay the sum due plaintiff and costs. Before the sale the grantee in the deed from defendant paid the full amount of the judgment and costs. *Held*, the attachment was thereby discharged.

"2. In a divorce case the wife was granted a divorce and the custody of a

minor child of the parties, and defendant was adjudged and ordered to pay plaintiff monthly a stated sum for the support of the child. *Held,* the sum to be paid by the husband was a personal obligation and was not a lien upon any of his property, and that the same was not enforceable by the wife in an action in the nature of a creditor's bill to set aside a conveyance of real property alleged to have been fraudulently made by the husband, following *Beasley v. Salkeld,* 131 Kan. 211, 289 Pac. 471," (Syl.)

In our opinion the present appeal must be disposed of under the rule of the two last cited cases and the judgment of the trial court affirmed, and it is so ordered.